IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34703-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE LUIS MATA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Jose Luis Mata asks for a new trial on charges that he possessed

methamphetamine with the intent to deliver. He claims his trial counsel performed

ineffectively when failing to request a lesser included offense jury instruction for the

inferior crime of possession of methamphetamine only. We affirm his conviction

because the trial evidence did not support a jury instruction for mere possession. We

remand, nonetheless, for a hearing on the imposition of legal financial obligations.

FACTS

The story behind the prosecution of Jose Mata begins with law enforcement's

apprehension of Christian Gonzalez. Christian Gonzalez later informed on Mata.

On April 14, 2016, Pasco Police Detective Jeremy Jones patrolled the streets of Pasco when he spotted Christian Gonzalez, then unknown to Jones, commit a bicycle infraction. Detective Jones signaled the bicyclist to stop and attempted to speak with Gonzalez, but, as Jones exited his patrol car, Gonzalez escaped on his bike. A chase ensued as Jones radioed police dispatch for assistance. Upon catching Gonzalez, Jones shoved him from the bike. Gonzalez escaped again, and the chase continued on foot. After a block and a half, Jones apprehended Gonzalez.

In the meantime, other officers arrived at the location where Detective Jeremy Jones arrested Christian Gonzalez. Pasco Detective Chad Pettijohn detained Gonzalez and searched his person incident to arrest. Detective Pettijohn found a bag of methamphetamine in Gonzalez's pants back pocket and $200 on his person. Detective Jones asked Detective Nathan Carlisle to retrace and search Gonzalez's path. Detective Carlisle found methamphetamine in a large bag on the ground near where Jones shoved Gonzalez from the bicycle. The large bag contained smaller bags. Later another officer found a bag of methamphetamine inside a sock in Gonzalez's waistband.

Eventually law enforcement weighed the amount of methamphetamine found in the respective bags. The bag found in the pants pocked weighed 16.78 grams. The bag found in the waistband contained 29.69 grams of methamphetamine. The large bag on the ground held 350.53 grams of the controlled substance.

Detective Jeremy Jones took Christian Gonzalez to the Franklin County jail.

2

Because of the amount of methamphetamine captured, Jones also invited United States

Drug Enforcement (DEA) Agent Andrew Corral to join him in interviewing Gonzalez

about his possession of controlled substances.

Andrew Corral and Jeremy Jones questioned Christian Gonzalez on April 14.

Gonzalez boasted about a large amount of methamphetamine stored inside a garage. He

specified that officers would find the drugs inside the garage wall's sheetrock and that

officers could pull a rope attached to the wall in order to remove the drugs. Gonzalez

utilized Google Maps on a detective's phone to identify the address of the garage, which

identification introduces us to defendant Jose Mata. The address constituted the home of

Jose Mata's parents. Mata lived inside the garage, which had been converted into a

bedroom and living room. Gonzalez insisted that the officers would find drugs only in

the garage and not inside the home. Gonzalez stated that no one in the Mata family knew

of the presence of the methamphetamine.

On the night of April 14, 2016, Pasco Police Department officers, including

Detectives Jeremy Jones and Nathan Carlisle, along with DEA Agent Andrew Corral

procured a search warrant for the Mata garage. Law enforcement went immediately to

the Mata home. Jose Mata's mother and stepfather opened the front door and allowed the

officers access inside the home. Meanwhile additional officers secured the perimeter of

the home. Dogs in the backyard barked at the officers' presence, at which time Jose Mata

exited the garage's large windowless window to discern the reason for the yelping dogs.

3

Officers detained Mata, who asked the officers to explain their presence. Detective Jones shrewdly responded with a question: "[w]hat does it say on the back of their vests?" Report of Proceedings (RP) (July 27, 2016) at 17. Mata read "DEA" and thoughtfully replied: "oh shit." RP (July 27, 2016) at 17.

Law enforcement officers next searched inside the wall of the Mata garage. Officers found two "food saver" bags of methamphetamine taped together. Both bags contained smaller bags of methamphetamine similar to the small bags officers found on Christian Gonzalez when arresting him. Officers found another "food saver" bag of similar packaging near a couch and a mannequin inside the garage. The packaging coincided with the packaging that law enforcement found on the person of Christian Gonzalez and on the ground where Gonzalez fled. In total, officers seized six pounds of methamphetamine, with a street value of at least $20,000, from the garage. Officers also snatched, from the top drawer of a dresser in the middle of the garage, a digital scale with white residue thereon and, from another dresser against the wall, a heavily used methamphetamine pipe. Officers discovered no money in the garage or on Jose Mata's person. The police forwarded the bags to the crime laboratory for fingerprint analysis. Officers found no controlled substances on the person of Mata.

During his arrest on April 14 and thereafter, Jose Mata declined to speak to officers. Christian Gonzalez, however, expanded his narrative during a law enforcement interview on the morning of April 15 at the Franklin County jail. Gonzalez stated the

4

methamphetamine was manufactured in Mexico. He identified a copious drug trafficker

in Tijuana, named Fabio. Fabio transferred the drugs to Huero, who drove the controlled

substances from Mexico to Pasco.

Throughout the April 15 law enforcement interview, Christian Gonzalez

repeatedly requested the detectives for help in reducing his charges. Detectives promised

to speak with prosecutors about his cooperation. Gonzalez repeated that Jose Mata did

not distribute methamphetamine, but only stored the drugs. DEA Agent Andrew Corral's

notes of the interview read:

> "Detectives Jones, TFO Task Force Officer Corral, myself,
> continued to speak to Gonzalez about the locations of narcotics, and
> Gonzalez stated that the family—Gonzalez stated that the family that lived
> at the residence where the narcotics were located had no knowledge of him
> hiding the narcotics there. Gonzalez also stated that had his friend that
> lives at the location did not have knowledge of the narcotics and that the
> friend had always been there—had always been there for him, for
> Gonzalez."

RP (July 27, 2016) at 67. A later paragraph of Corral's notes recorded Gonzalez's

comments:

> "Gonzalez again stated that the people that live at the residence do
> not have any knowledge that narcotics were there."

RP (July 27, 2016) at 67. A third paragraph noted that officers asked Gonzalez again

about Mata's role:

> "Gonzalez was again asked about Mata's involvement with narcotics
> trafficking, and Gonzalez said that he didn't know Joey [Mata] to deal
> drugs at all and that they just smoke together."

5

RP (July 27, 2016) at 68. A fourth paragraph of Corral's report noted more questioning:

"Gonzalez was again asked about Mata's involvement in narcotics trafficking, and again Gonzalez stated that he didn't know of Joey's involvement."

RP (July 27, 2016) at 69. Detectives refused to believe Gonzalez's denial of Mata's participation in sales. The officers emphasized the importance of full disclosure for Gonzalez to "get consideration" for the federal narcotics charges he faced.

Christian Gonzalez eventually changed his story and claimed that Jose Mata showed Gonzalez the hole in the wall, helped him place the methamphetamine bags inside the wall, and assisted in reinforcing the wall to further conceal the drugs. Gonzalez added that he handed Mata $20 to purchase the scale seized during the officers' execution of the warrant and he also gave Mata an ounce of methamphetamine for Mata's help. Gonzalez told officers that Mata helped sell methamphetamine at a Pasco motel.

Law enforcement never corroborated Christian Gonzalez's claim, uttered after continuous pressure, that Jose Mata aided in hiding or selling the methamphetamine. The laboratory did not find Mata's fingerprints on the methamphetamine bags. Officers never found the ounce of methamphetamine that Mata supposedly received from Gonzalez.

## PROCEDURE

The State of Washington charged Jose Luis Mata with unlawful possession of a controlled substance with intent to deliver. The prosecution proceeded to a jury trial.

At trial, Detective Nathan Carlisle testified for the State of Washington. Detective Carlisle had worked in the Pasco Police Department's street crimes unit for five years. During his testimony, Carlisle described his involvement in executing the search warrant at Jose Mata's home. The State asked Carlisle about the scale found in the garage: "In your experience what are these scales used for?" RP (July 27, 2016) at 42. Detective Carlisle responded: "These digital scales are commonly used for narcotics and measuring up and dividing up for amounts for *sale or use*." RP (July 27, 2016) at 42 (emphasis added). DEA Agent Andrew Corral averred that the amount of methamphetamine found in the garage identified the presence of a person high in the drug trafficking strata.

In the cross-examination of DEA Agent Andrew Corral, Jose Mata's counsel asked him to read portions of his written report, which detailed the events that transpired during the night of April 14 and the April 14 and 15 interviews of Christian Gonzalez. Agent Corral read the entries in his notes where Gonzalez repeatedly averred that Mata knew not of the methamphetamine stored in his garage. A forensic drug chemist testified and identified the seized drugs as methamphetamine.

The State sought to admit, as exhibits, two pictures of Jose Mata's personal belongings. In objecting to the photographs' admission, Mata's counsel explained:

> MR. STOVERN: It is not necessary for them to show items 3 and 4 to prove dominion and control. They have already testified that Joey Mata lives there. They've already got a prescription bottle with his name on it. It's not our intention to—to say that he does not live there. . . .
>
> . . . .

7

> MR. DOWNER: As Mr. Chow stated, I disagree, your Honor. It's just one of the many things that led officers to believe that, one, Mr. Mata was staying there, and there's many items of his, his personal effects throughout there.
>
> MR. STOVERN: We'll stipulate that he lived in the garage on the record right now.
>
> MR. CHOW: We have the burden. I don't think the defense gets to tell us how to do our job.

RP (July 27, 2016) at 14-15. The trial court sustained the objection to admission of the photographs while commenting that he accepted Jose Mata's stipulation that he lived in the garage.

Neither Christian Gonzalez nor Jose Mata testified at trial. Mata called no witnesses.

During closing arguments, defense counsel underscored that Christian Gonzalez, not Jose Mata, faced federal charges for trafficking in methamphetamine. Counsel emphasized that Gonzalez repeatedly told law enforcement that Mata knew not of the methamphetamine stashed in the garage wall. Counsel emphasized that Gonzalez accused Jose Mata of planning to deliver the methamphetamine only after four denials and only after Gonzalez concluded he must implicate Mata in order to lessen his federal charges or sentence. Counsel highlighted the facts that law enforcement found no drugs or money on Mata and no fingerprints of Mata on the methamphetamine bags. Counsel highlighted that Gonzalez failed to testify in person such that the jury heard his story only by second hand or third hand.

8

The trial court instructed the jury on the elements of unlawful possession of a controlled substance with intent to deliver. The instructions included a definition of "possession" as "having a substance in one's custody or control. It may be either actual or constructive." Clerk's Papers (CP) at 60. Finally, the court instructed the jury on intent to deliver:

Deliver or delivery means the actual or constructive or attempted transfer of a controlled substance from one person to another.

CP at 63. Defense counsel did not request an instruction for possession only.

The jury found Jose Mata guilty of the charge of unlawful possession with intent to deliver. Mata faced a standard range sentence of five to ten years. The trial court sentenced him to seven and one-half years.

During the sentencing hearing, the trial court asked defense counsel if he had spoken to Jose Mata about his ability to pay fines, restitution, and fees. Counsel responded:

MR. STOVERN: I know currently he has a lot of [legal financial obligations] LFO's from previous matters.
THE COURT: That doesn't have anything to do with whether he can work or not.
MR. STOVERN: He is applying for [Social Security Insurance] SSI, but that's gonna be delayed.
THE COURT: I will assess the appropriate fines and he can address those later with the LFO clerks.

RP (Aug. 16, 2016) at 4. The court signed boilerplate language findings in the judgment and sentence that read: "the defendant is an adult and is not disabled and therefore has the

9

ability or likely future ability to pay the legal financial obligations" including the defendant's financial resources and the likelihood that the defendant's status will change. CP at 78.

## LAW AND ANALYSIS

### Ineffective Assistance of Counsel

### And Lesser Crime Jury Instruction

Although Jose Mata did not testify, under Mata's version of the events, he never intended to deliver the drugs found inside his garage bedroom wall. Mata protests that only Christian Gonzalez planned to distribute the methamphetamine and that Gonzalez merely stored the substance at Mata's house. He emphasizes that Gonzalez implicated him only after threats and promises from law enforcement. Mata contends that, at most, he is guilty of possession of controlled substances. Since simple possession of a controlled substance is a lesser included offense of possession with the intent to deliver, Mata argues he was entitled to such an instruction permitting the jury to convict him of the inferior crime. He faults his attorney for failing to propose the lesser included offense instruction. He asks us to reverse his conviction and remand for a new trial based on ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees an accused the right to legal counsel in criminal trials. Washington's Constitution also grants an accused in a criminal prosecution the right to appear by counsel. WASH. CONST. art. I, § 22.

10

The right to counsel under the state and federal constitutions is coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

The constitution secures the accused more than an attorney who sits next to him during trial. To meaningfully protect an accused's right to counsel, the constitution demands effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The law recognizes the right to effective assistance not for its own sake, but for its effect on the ability of the accused to receive a fair trial. *State v. Webbe*, 122 Wn. App. 683, 694, 94 P.3d 994 (2004).

State and federal decisions follow the teachings and legal test announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668. A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

For an accused to show ineffective assistance of counsel for failing to request a jury instruction, the accused must establish entitlement to the instruction. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). Therefore, we first review whether the trial court should have, assuming Jose Mata requested one, delivered a lesser included jury instruction for the inferior crime of possession of a controlled substance. Because

11

we hold that the evidence did not support a conviction for possession without an intent to deliver, we do not further address whether defense counsel's failure to seek the instruction constituted ineffective assistance of counsel.

RCW 10.61.006 codifies the right to a lesser included offense jury instruction. The statute reads:

> In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information.

Washington's leading decision on lesser included offenses jury instruction is *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). In *Workman*, the state high court instituted a two-tine test to determine whether a party is entitled to an instruction on a lesser included offense. Under the first prong of the test, labeled the legal prong, the court asks whether the lesser included offense consists solely of elements necessary to conviction of the greater, charged offense. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). If one may commit the greater offense without committing the lesser offense, the latter is not an included crime. *State v. Roybal*, 82 Wn.2d 577, 583, 512 P.2d 718 (1973). Under the second or factual prong, the court asks whether the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense. *State v. Condon*, 182 Wn.2d at 316. The requesting party is entitled to the lesser included offense instruction when the answer to both questions is yes. *State v. Condon*, 182 Wn.2d at 316.

12

The State impliedly concedes that Jose Mata fulfills the legal prong of the *Workman* test. Simple possession of a controlled substance is a lesser included offense of the crime of possession with the intent to deliver. *State v. Hassan*, 151 Wn. App. 209, 216, 211 P.3d 441 (2009); *State v. Harris*, 14 Wn. App. 414, 418, 542 P.2d 122 (1975).

Jose Mata must still satisfy the factual prong of the *Workman* test. An accused fulfills the factual prong when the evidence permits a jury to rationally find the accused guilty of the lesser offense and acquit him of the greater. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). In making this determination, the court must consider all evidence presented at trial by either party. *State v. Fernandez-Medina*, 141 Wn.2d at 455-56. The court must also view the evidence in the light most favorable to the party requesting the lesser included offense instruction. *State v. Condon*, 182 Wn.2d at 321.

We base our decision on the following principles applied to the second or factual prong of the *Workman* test. The evidence presented in the case must support an inference that the accused committed *only* the lesser offense to the exclusion of the greater, charged offense. *State v. Condon*, 182 Wn.2d at 316 (2015). The evidence must affirmatively establish the defendant's theory of the case. *State v. Fernandez-Medina*, 141 Wn.2d at 456. The accused does not prevail by merely contending the jury may disbelieve the State's evidence. *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990).

In examining whether Jose Mata was entitled to a lesser included offense jury

13

instruction, we outline the differing stories. Since Jose Mata remained silent and exercised his right not to testify, the facts come from the statements rendered by Christian Gonzalez to law enforcement and the physical facts as observed by law enforcement officers. The physical facts showed a large amount of methamphetamine inside the wall of a garage that functioned as the living quarters of Jose Mata. The amount prompted the involvement of federal agents. A bag of methamphetamine lay near a couch in the middle of the garage and a scale used to measure drugs rested in a dresser drawer. Mata crawled through the garage's open window when he heard barking dogs and used an obscenity when he observed the presence of DEA agents.

Under Christian Gonzalez's first story about Jose Mata's participation in the crime, Gonzalez insisted that his friend, Mata, knew not of the presence of the methamphetamine in the garage and did not assist in the methamphetamine operation. Gonzalez provided no explanation as to how someone stashed the methamphetamine inside the wall and left a bag of methamphetamine near the couch without the knowledge of the occupant of the garage. Later Gonzalez told a variant story, under which Mata did not deal drugs but the two friends smoked together. Gonzalez did not identify the substance that the two smoked.

During his third version of Jose Mata's participation, Christian Gonzalez stated that Jose Mata knew of the presence of the methamphetamine, identified the location of hole in the garage wall used for stashing drugs, and assisted in storing the

14

methamphetamine in the wall. When relating this later version of the story, Gonzalez added that Mata assisted in selling methamphetamine at a Pasco hotel and purchased the scale. During cross-examination of law enforcement officers and during closing argument, defense counsel underscored that officers found no drugs or money on Jose Mata and officers never found the ounce of methamphetamine that Mata supposedly received from Gonzalez as payment for Mata's assistance.

From Christian Gonzalez's first story we glean that Jose Mata knew not of the presence of methamphetamine in the garage. Under this theory, Mata would enjoy the defense of unwitting possession to both a charge of possession with intent to distribute and a charge of possession without intent. *State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994); *City of Kennewick v. Day*, 142 Wn.2d 1, 11, 11 P.3d 304 (2000). Thus, under story one, the evidence did not support a conviction for possession alone or a jury instruction to garner the conviction.

According to the second story, Mata "smoked" with Gonzalez, but still knew not of the presence of methamphetamine in the garage. Mata could possess without the intent to deliver a substance that he smoked. Nevertheless, the jury heard no testimony about the substance smoked. A detective testified that law enforcement found a used methamphetamine pipe, but the State did not link Gonzalez's testimony of smoking to the pipe. In a prosecution for unlawful possession, the State must establish beyond a reasonable doubt the nature of the substance. *State v. Staley*, 123 Wn.2d at 798; *State v.*

15

*Pierce*, 134 Wn. App. 763, 774, 142 P.3d 610 (2006). The jury might guess that the smoked substance was methamphetamine, but a jury may not convict on speculation. *United States v. Michel*, 446 F.3d 1122, 1127 (10th Cir. 2006).

In the third version of Christian Gonzalez's story, Gonzalez indicated that he gave Jose Mata an ounce of methamphetamine, but this transfer of an ounce for personal use was integral to Mata's assistance in secreting and selling the unlawful drug. We must view the totality of the evidence when determining the suitability of a jury instruction. We are not free to believe a portion of the story and discount an undivided portion of the same story. Thus, the only evidence of Gonzalez possessing a controlled substance is within the context of storing, hiding, and marketing the substance. For this reason, the affirmative evidence only supported a finding of possession with an intent to deliver.

Jose Mata does not argue evidence supported a jury instruction for possession without an intent to distribute based on his alleged smoking with Christian Gonzalez or his allegedly receiving an ounce of methamphetamine from Gonzalez in payment for services. To the contrary, he claims the absence of evidence to confirm his possession of the ounce. Mata instead, when arguing the facts supported a lesser included offense instruction, highlights the evidence that he controlled the garage and officers found methamphetamine in the garage. He contends this actual or constructive possession of the methamphetamine could convict him solely of possession. We disagree. Mata's argument ignores the legal implications of his dominion over the methamphetamine

16

found in the garage.

RCW 69.50.401 proscribes:

(1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

RCW 69.50.101 declares:

(g) "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a substance, whether or not there is an agency relationship.

Under the crime of possession with intent to deliver, the State need not show a sale or even a delivery of a controlled substance, only an intent to deliver at some time in the past or future. *State v. Atsbeha*, 142 Wn.2d 904, 921, 16 P.3d 626 (2001); *State v. Vike*, 125 Wn.2d 407, 411-12, 885 P.2d 824 (1994).

Possession of a controlled substance, without more, fails to establish an inference of intent to deliver. *State v. Hagler*, 74 Wn. App. 232, 235, 872 P.2d 85 (1994). Nevertheless, Mata stipulated that he possessed dominion and control over the garage. Since Jose Mata controlled the garage, the possession of the methamphetamine necessarily passed to and from Mata and Christian Gonzalez or someone else involved in the sale of drugs. A transfer entails relinquishing control to another. *State v. Martinez*, 123 Wn. App. 841, 847, 99 P.3d 418 (2004). Thus, at some point, Mata participated in a delivery. He presented no testimony that he intended for personal use all six pounds of methamphetamine, a powerful stimulant, embedded in his garage.

17

Generally, the State must present one factor, in addition to possession and suggestive of sale, to establish an inference of intent to deliver. *State v. Todd*, 101 Wn. App. 945, 953, 6 P.3d 86 (2000), *overruled by State v. Rangel-Reyes*, 119 Wn. App. 494, 81 P.3d 157 (2003). In the case on appeal, the State presented evidence of an excessive wad of methamphetamine, a scale to weigh individual portions of the unlawful drug, and unique packaging. In *State v. Simpson*, 22 Wn. App. 572, 575, 590 P.2d 1276 (1979), this court considered the quantity of drugs and nature of packaging to support an inference of possession with intent to deliver. Foreign cases recognize the presence of a scale as evidence of intent to distribute the controlled substance. *State v. Purvis*, 51, 215 (La. App. 2 Cir. 4/15/17) 217 So. 3d 620, 624; *Beard v. State*, 318 Ga. App. 128, 130, 733 S.E.2d 426 (2012); *State v. Leyva*, 229 Or. App. 479, 485, 211 P.3d 968 (2009); *People v. DeLuna*, 334 Ill. App. 3d 1, 777 N.E.2d 581, 602, 267 Ill. Dec. 778 (2002); *State v. Ross*, 49 S.W.3d 833, 846 (Tenn. 2001); *Herbert v. State*, 136 Md. App. 458, 766 A.2d 190, 192 (2001). Law enforcement officers found six pounds of methamphetamine in the garage compartment, while Washington law considers even one ounce a large amount of a controlled substance. *State v. Lopez*, 79 Wn. App. 755, 769, 904 P.2d 1179 (1995).

Jose Mata's permission to allow storage of Christian Gonzalez's stock in trade of methamphetamine alone establishes possession with the intent to deliver, not simply possession. In *United States v. Valencia*, 907 F.2d 671, 674 (7th Cir. 1990), defendant

18

Ivan Martinez built a twenty-four by twenty-four inch storage compartment for his associate Jose Valencia, who marketed cocaine. Although the court noted that officers found cash on Martinez's person, the court also affirmed the conviction on the basis of construction of the storage compartment.

## Legal Financial Obligations

Jose Mata challenges the imposition of $5,700 in discretionary legal financial obligations. He did not object to the imposition before the trial court. This court is not required to grant review, but may exercise its discretion to do so. *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015). In *Blazina*, our Supreme Court stated that each appellate court must make its own decision to accept discretionary review. *State v. Blazina*, 182 Wn.2d at 835. The court continued that national and local cries for reform of broken financial obligations systems encourage review of the merits of the financial obligations. *State v. Blazina*, 182 Wn.2d at 835. The State of Washington does not object to this court's review of Jose Mata's second assignment of error. A majority of this court accepts review.

$5,000 of Jose Mata's $5,700 in discretionary legal financial obligations result from two different discretionary fines. The trial court imposed a methamphetamine cleanup fine of $3,000. The court also imposed a $2,000 fine pursuant to RCW 9A.20.021(1)(b), which allows for imposition of fines for punishment of class B felonies. This fine does not constitute "costs" for the purposes of the mandate in RCW

19

10.01.160(3), that directs the trial court to conduct an inquiry into the defendant's ability to pay. *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). Therefore, we affirm $5,000 of the fines.

Jose Mata cites to a Supreme Court order from 2017, in *State v. Clark*, 187 Wn.2d 1009, 388 P.3d 487 (2017), wherein the court remanded the case to the trial court for an individualized inquiry into the ability to pay. Nevertheless, the remand concerned a different *Clark* case from 2016 so it is not relevant to the inquiry here. *State v. Clark*, 195 Wn. App. 868, 381 P.3d 198 (2016), *review granted in part by* 187 Wn.2d 1009, 388, P.3d 487 (2017).

The trial court imposed costs of $600 fee for a court appointed attorney and $100 as a crime lab fee. These costs fall under the mandate of RCW 10.01.160, by which the court must assess the offender's ability to pay. The trial court conducted no inquiry into Jose Mata's ability to pay. In these circumstances, we would normally remand to the trial court to conduct an individualized inquiry into the offender's financial capability to pay costs. Because the trial court judge has retired and the amount of the costs at issue is only $700, we order the vacation of $700 in costs without any further hearing.

## CONCLUSIONS

We affirm Jose Mata's conviction for possession of methamphetamine with the intent to deliver the controlled substance. We direct a remand of the case to the trial

No. 34703-6-III
*State v. Mata*

court to vacate $700 in legal financial obligations. Otherwise, we affirm the costs imposed by the trial court. We deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

21